CHARLES R. REYNOLDS *vs.* THE MAYOR AND ALDERMEN OF PAWTUCKET.

PROVIDENCE—DECEMBER 2, 1901.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Certiorari.   Police Officers.   Removal.   Charges.*

Charter of the city of Pawtucket, section 4, clause 2 (Pub. Laws cap. 895, March 29, 1901), provides that all removals from office of members of the paid police force shall be by the board of aldermen upon charges in writing of which the officer complained of shall have had notice and an opportunity to be heard: *provided*, that the chief of police may suspend any officer until the next meeting of the board of aldermen, when he shall report such suspension, with his reasons therefor:—

*Held*, that while technical exactness was not required, the charge should be explicit at least to the extent of informing the accused of the particular offence with which he was charged and giving him an opportunity of preparing his defence thereto, and that a mere report of the chief of police to the aldermen stating a suspension, with his reasons, was not sufficient to put an officer upon his trial.

CERTIORARI.   The facts are stated in the opinion.   Heard on motion for writ, and writ granted.

STINESS, C. J.   This petition for a writ of *certiorari* is based upon several grounds, only one of which needs to be considered at present.

(1)    In the charter of Pawtucket is this clause : "Provided, that members of the paid police department of said city shall not be subject to removal from office at any time except for misconduct or incapacity of such character as the board of aldermen may deem a disqualification for said office, and all such removals shall be by the board of aldermen, upon charges made in writing and of which the officer complained of shall have had notice and an opportunity to be heard thereon ; and provided further that the chief of police may at any time suspend any police officer from his office until the adjournment of the next meeting of the board of aldermen, at which meeting he shall report any and all such suspensions with his reasons therefor." Charter, section 4, clause 2, Pub. Laws, cap. 895, March, 1901.   Under this authority the chief of police suspended the petitioner June 28, 1901, and made his report to the board of aldermen, as follows :

"PAWTUCKET, R. I., July 9, 1901.

"*To the Honorable the Board of Aldermen of the City of Pawtucket :*

"GENTLEMEN :   Respectfully represents the undersigned chief of police of the city of Pawtucket, and in accordance with the provisions of the city charter, reports to your honorable body that on the 28th day of June, 1901, I suspended patrolman Charles R. Reynolds for conduct unbecoming an officer for three days, and, at the end of that period, continued the suspension ; said officer was re-instated by the mayor July 2, 1901.

"The reasons for my suspension of the officer were as follows : warrants had been issued against Louisa Johnson and Emma Martin for larceny of bicycles ; said officer had been notified of the warrants and ordered to arrest the persons against whom they were issued.   The two persons, when afterwards arrested, said that officer Reynolds met them with the stolen bicycles in their possession, and told them where to leave the wheels, and that he would send for the "hurry-up" wagon and take the wheels to the station ; and for the girls not to go home as detective Haberlin had been at their

homes looking for them, and he might be there awaiting their return.   This I considered conduct unbecoming an officer, and suspended him as aforesaid.   His Honor, the Mayor, re-instated Officer Reynolds on the grounds set forth in the order enclosed herewith.

"Respectfully submitted,

"RANDALL H. RICE,

"*Chief of Police.*"

The board of aldermen then passed the following vote :

"Charges were presented by Chief of Police Rice against officer Charles R. Reynolds for conduct unbecoming an officer.   Hearing ordered for July 16 at one o'clock P. M., when said officer was notified to appear and be heard."

No other charges were preferred, and the question arises whether on such a record it can be held that charges have been made as required by the charter.

A trial of an officer upon charges is analogous to a criminal complaint to this extent, at least—that the accused should be informed of the charge, so that he may know beforehand what the particular offence is with which he is charged and be able to prepare his defence.   As said in *State* v. *Spink*, 19 R. I. 353 ; "The charge must be sufficiently explicit to support itself."

The letter of the chief of police does not purport to be a charge for trial, but simply a report.   If we should assume that the board of aldermen were justified in taking the report as a charge, the question would still remain—what is the charge ?   Is it the statement of the two persons as set out in the report, or what the officer said or what he did, or was it conduct on the part of the officer which the board of aldermen deemed a disqualification for the office ?

It is impossible to say from so general a statement.   Although it is not to be expected that charges will in all cases be framed with the technical exactness required in criminal pleading, they should certainly show that charges are made and what they are with sufficient clearness to inform the accused of the matter for which he is to be tried.   It is not

difficult to set forth charges in simple and definite form, such as : Conduct amounting to a disqualification for his office in this (that he did thus).

The petitioner protested against the action of the board because of insufficiency in the charge, and the protest was overruled.

Under these allegations the writ should issue to ascertain whether the record, when produced, will disclose the defects alleged.

*Hugh J. Carroll,* for complainant.

*Edward W. Blodgett, City Solicitor of Pawtucket,* for respondents.